IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND,<br>257 Park Ave. S.<br>New York, NY 10010,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY,<br>1200 Pennsylvania Ave., NW,<br>Washington, DC 20460,<br><br>    Defendant. | Civil Action No.<br><br><br><br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.       This case involves efforts to obtain information vital to public understanding of local air pollution that could severely impact the health of nearby communities.

2.       Clean Air Act Section 112 requires the Environmental Protection Agency ("EPA") to limit emissions of approximately 190 highly toxic air pollutants—many linked to cancer, birth defects, and other serious health harms—from industrial facilities. EPA has adopted standards under Section 112 to limit harmful air pollution emissions from over 500 industrial and power facilities around the country. These standards improve air quality and save lives.

3.       On March 12, 2025, EPA announced that it is reconsidering multiple Clean Air Act Section 112 hazardous air pollution standards, and subsequently EPA unveiled a website inviting industrial pollution sources to submit, via email to an EPA email address, their requests for compliance exemptions from nine such standards. On April 8, 2025, the President issued a proclamation purporting to exempt 68 facilities from complying with one standard, known as the

Mercury and Air Toxics Standards Update Rule—which limits mercury, nickel, arsenic, and other toxic emissions from certain power plants. EPA subsequently posted the list of exempted facilities on its website.

4. To bring greater transparency regarding the Administration's actions to limit implementation of Clean Air Act Section 112 protections, Plaintiff EDF submitted a request under the Freedom of Information Act ("FOIA") to EPA on March 27, 2025, seeking related correspondence and records, including all emails sent to and from the mailbox created by EPA to solicit exemption requests (the "FOIA Request"). EPA failed to produce records or make determinations on EDF's request by the statutory deadline, violating EDF's rights under FOIA and depriving the public of vital records of clear and immediate public interest.

5. EDF files this action to enforce EPA's statutory obligations under FOIA, 5 U.S.C. § 552. EPA is unlawfully withholding records requested by EDF, to which EDF is lawfully entitled under FOIA, despite the records' clear salience to current agency actions with grave risks for public health and welfare. EDF seeks declaratory and injunctive relief declaring that EPA has violated FOIA and an order compelling the agency to promptly release all requested records.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to FOIA, which vests jurisdiction in the U.S. District Court for the District of Columbia. 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under FOIA, a federal statute.

7. FOIA provides for injunctive relief under 5 U.S.C. § 552(a)(4)(B). The Declaratory Judgment Act provides for declaratory relief pursuant to 28 U.S.C. § 2201 *et seq*.

8. Venue is proper in this judicial district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

9. Plaintiff EDF is a 501(c)(3) non-profit environmental organization dedicated to finding practical solutions to environmental problems through the use of law, policy, science, and economics. EDF has offices throughout the United States, including in the District of Columbia.

10. EDF engages in extensive, daily efforts to inform the public about matters affecting environmental and energy policy, as well as about climate change science and the human health impacts of pollution. EDF has multiple channels for distributing information to the public, including through direct communication with its more than three million members and supporters, press releases, blog posts, and active engagement on social media. EDF is frequently called upon to share its expertise on important environmental issues in the popular media and in other public forums.

11. EDF has long advocated for measures to protect communities from the harmful effects of air pollution and climate change. EDF advocated for and supported protective EPA standards to reduce hazardous air toxic emissions from petrochemical facilities, and to reduce air and climate pollution from large sources such as power plants, cars and trucks, and oil and gas operations. These standards have been successful in significantly reducing harmful emissions, including greenhouse gases, from power plants and other sources.

12. EDF is injured by EPA's failure to timely produce public records that were properly requested and to which EDF is entitled under FOIA. *See Zivotofsky v. Sec'y of State,*

444 F.3d 614, 617-18 (D.C. Cir. 2006) ("The requester is injured-in-fact for standing purposes because he does not get what the statute entitles him to receive.").

13. Defendant EPA is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and is subject to FOIA. EPA has possession and control of the requested records and is responsible for fulfilling the FOIA Request.

## LEGAL BACKGROUND

14. FOIA requires a federal agency to make public records "promptly available"—subject to enumerated exemptions—to any person who makes a request that reasonably describes the records sought and complies with the agency's rules for making the request. 5 U.S.C. § 552(a)(3)(A).

15. FOIA requires the agency to issue a determination on a FOIA request within 20 working days from the date of receipt. 5 U.S.C. § 552(a)(6)(A)(i).

16. The agency's determination on a FOIA request shall contain (1) the agency's determination of whether to comply with the request and provide responsive records, (2) the reasons for the agency's determination, and (3) notice of the right of the requester to appeal an adverse determination to the head of the agency. *Id.*

17. Mere notice of the agency's receipt of the request does not suffice for a "determination," nor is it enough that "within the relevant time period, the agency simply decide to later decide." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013). Instead, "the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Id.*

18.     A FOIA requester may seek "expedited processing" of a request for records, and a determination on a request for expedited processing must be made, and notice of that determination provided to the requester, within 10 days of the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii).

19.     If the agency fails to comply with FOIA's statutory deadline for issuing a determination on a request, the requester is deemed to have exhausted its administrative remedies and may file suit against the agency. *Id.* § 552(a)(6)(C)(i).

20.     Under FOIA, an agency shall waive or reduce fees and costs incurred in responding to a FOIA request "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operation or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

21.     The agency bears the burden to prove the legality of its actions under FOIA. 5 U.S.C. § 552(a)(4)(B).

22.     FOIA grants jurisdiction to the court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*.

23.     Under FOIA, this Court may assess attorney fees and costs against the United States if EDF substantially prevails in this action. *Id*. § 552(a)(4)(E).

## FACTUAL BACKGROUND

**A. EPA Standards to Reduce Hazardous Air Pollution; Actions by the Current Administration to Limit Implementation of Such Standards**

24. The EPA has adopted standards under Clean Air Act Section 112 to limit air pollution emissions, including toxic emissions, from over 500 industrial and power facilities around the country. These standards improve air quality and save lives.

25. On March 12, 2025, EPA announced that it is reconsidering dozens of air pollution reduction standards, including limits on the mercury emissions from power plants that cause brain damage in young children and limits on hazardous air pollution emissions from more than 200 of the largest and most polluting petrochemical facilities around the country. *See* EPA, Press Release: EPA Launches Biggest Deregulatory Action in U.S. History (Mar. 12, 2025), https://www.epa.gov/newsreleases/epa-launches-biggest-deregulatory-action-us-history.

26. On or around March 24, 2025, EPA published a new webpage announcing an exemption process to allow "the regulated community"—i.e., industrial sources of pollution—to request a Presidential compliance exemption from nine Clean Air Act Section 112 air pollution standards. *See* Web Archive Snapshot: EPA, Clean Air Act Section 112 Presidential Exemption Information (recorded Mar. 27, 2025), https://web.archive.org/web/20250327150027/https://www.epa.gov/stationary-sources-air-pollution/clean-air-act-section-112-presidential-exemption-information. EPA directed interested sources to "submit a request for a Presidential Exemption to this email address: airaction@epa.gov by March 31, 2025," and outlined other information the source or facility should provide in the email. *Id.*

27. EPA stated that the compliance exemption process was available for sources subject to nine air pollution rules, "while EPA reconsiders these rules" pursuant to its

6

announcement on March 12, 2025. *Id.* The standards for which EPA is offering exemptions are: the Mercury and Air Toxics update rule for coal- and oil-fired power plants ("MATS Update Rule"); the National Emission Standards for Hazardous Air Pollutants for synthetic organic chemical manufacturing facilities and polymers and resins industries ("HON Rule"), and standards addressing toxic pollution from sterilizer facilities, rubber tire manufacturing facilities, copper smelting facilities, iron and steel manufacturing facilities, lime manufacturing plants, taconite iron ore processing, and coke ovens. *See* Web Archive Snapshot: EPA, Clean Air Act Section 112 Presidential Exemption Information (recorded Mar. 27, 2025), https://web.archive.org/web/20250327150027/https://www.epa.gov/stationary-sources-air-pollution/clean-air-act-section-112-presidential-exemption-information. Each of these rules was adopted through an extensive public process involving opportunities for public comment and participation.

28. On April 8, 2025, the President purported to exempt what were later revealed to be 68 facilities from complying with the MATS Update Rule. *See* Presidential Proclamation: Regulatory Relief for Certain Stationary Sources to Promote American Energy (Apr. 8, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/rregulatory-relief-for-certain-stationary-sources-to-promote-american-energy; EPA, Annex 1 (Apr. 2025) https://www.epa.gov/system/files/documents/2025-04/regulatory-relief-for-certain-stationary-annex-1.pdf (providing list of exempted sources). Neither the White House nor EPA immediately released the list of facilities granted these purported exemptions.

29. On April 14, 2025, EPA posted the list of categories of sources granted so-called compliance exemptions from the MATS Update Rule on its website. EPA, *Presidential Proclamation – Regulatory Relief for Certain Stationary Sources to Promote American Energy*

(last updated Apr. 14, 2025), https://www.epa.gov/stationary-sources-air-pollution/presidential-proclamation-regulatory-relief-certain-stationary.

30. It has been publicly reported that the American Chemistry Council and American Fuel & Petrochemical Manufacturers submitted a request to EPA on March 31, 2025, seeking a blanket two-year compliance exemption from the HON Rule for more than 200 facilities. Annie Snider, *Petrochemicals industry asks for sweeping exemption from air toxics limits*, E&E News (Apr. 3, 2025), https://subscriber.politicopro.com/article/2025/04/petrochemicals-industry-asks-for-sweeping-air-rule-exemption-00271366; Letter from American Chemistry Council and American Fuel & Petrochemical Manufacturers to U.S. EPA (Mar. 31, 2025), https://tinyurl.com/ACCAFPMLetter.

31. EPA has not made available to the public any information about which facilities have requested exemptions, nor—aside from posting the list of 68 coal plants purportedly granted Presidential exemptions from the MATS Update Rule—has EPA released any information about any responses or decisions to grant or deny those exemption requests. Communities sited near industrial sources of air pollution have no way of knowing whether such sources are seeking to avoid compliance with Clean Air Act Section 112 standards.

**B. FOIA Request to EPA Regarding Clean Air Act Section 112 Compliance Exemptions (Request No. 2025-EPA-04812)**

32. On March 27, 2025, EDF submitted the FOIA Request to EPA seeking the following records:

1. Records relating to EPA's action instituting a process to issue compliance exemptions under Clean Air Act section 112, including correspondence with outside entities about the development of, and institution of, this process;
2. Records of decisions by any federal or state entity to either grant or deny a compliance exemption pursuant to Clean Air Act section 112(i)(3)(B) or 112(i)(4);
3. Records of the rationale or reasoning for the decision to grant or deny the exemption;

8

4. All correspondence with outside entities relating to Clean Air Act section 112(i)(3)(B) or 112(i)(4) exemptions, including any requests for exemptions and any information or materials in support of a request for such an exemption;
5. All correspondence to and from the following electronic mailbox: airaction@epa.gov.

*See* Ex. A at 3 (Letter from Richard Yates, EDF, to Freedom of Information Officer, EPA). To facilitate EPA's search for correspondence records pursuant to items (1) and (4) in the above list, EDF identified 33 EPA political appointees and/or transition team members, 49 external entities, and 10 search terms. *Id.* at 3-8.

33. Given EPA's fast-moving actions to reconsider hazardous air pollution standards and solicit industry requests for compliance exemptions, and EDF's strong interest in understanding and publicly sharing records of correspondence between EPA and industry regarding compliance exemptions from air pollution standards, EDF requested expedited processing of the FOIA Request. *Id*. at 8-10; *see also* 5 U.S.C. § 552(a)(6)(E)(i)(I); 40 C.F.R. § 2.104(g).

34. EDF also requested a waiver of fees associated with the FOIA Request. Ex. A at 10-12; *see also* 5 U.S.C. § 552(a)(6)(E)(i)(I); 40 C.F.R. § 2.104(g).

35. On March 27, 2025, EDF received an email from EPA acknowledging receipt of the FOIA Request and assigning the Request a case number of 2025-EPA-04812. Ex. B at 1 (Email from EPA National FOIA Office, to Erin Murphy, EDF).

36. On April 4, 2025, EDF received a letter from EPA denying its request for expedited processing. Ex. C at 3 (Letter from Lee Hagy, EPA, to Erin Murphy, EDF).

37. On April 4, 2025, EDF received a letter from EPA granting its request for a fee waiver. Ex. D (Letter from Lee Hagy, EPA, to Erin Murphy, EDF).

38. On April 7, 2025, EDF received an "Acknowledgment Letter" from EPA via email, stating that EDF's request was assigned for processing, and identifying a point of contact in the EPA Office of Air and Radiation FOIA Program. Ex. E (Email from Rasheena Spears, EPA, to Erin Murphy, EDF).

39. The April 7 Acknowledgment email did not inform EDF of "the scope of the documents that the agency will produce" or "the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 186; *see* Ex. E.

40. The April 7 Acknowledgment email did not include a determination on the FOIA request.

41. The April 7 Acknowledgment email did not provide an estimated completion date for the FOIA request, and EDF did not agree to an alternative time period for EPA to process the FOIA request.

42. EPA did not provide any documents or a determination on the FOIA request within FOIA's 20 working-day deadline per 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 2.104(a)(1).

43. To date, EPA has not issued a determination on the FOIA request or produced any records in response to the FOIA request.

44. The information sought in the FOIA Request will be critical to understand EPA's action to institute a process for industry requests for compliance exemptions, and to understand EPA's correspondence with industry entities regarding the agency's solicitation of industry requests for compliance exemptions from nine hazardous air pollution standards.

45. EPA's failure to respond to the FOIA Request within the required timeframe has prevented EDF, its members, and the general public from being fully informed and able to meaningfully engage on this issue.

## CLAIM FOR RELIEF

### COUNT I: VIOLATION OF THE FREEDOM OF INFORMATION ACT

46. EDF incorporates by reference all preceding paragraphs.

47. Under FOIA, EDF has a statutory right to have EPA process the FOIA Request in a timely manner.

48. Under FOIA, EDF has a statutory right to timely obtain all non-exempt records responsive to the FOIA Request.

49. EPA failed to comply with the statutory deadline for issuing a determination on the FOIA Request per 5 U.S.C. § 552(a)(6)(A)(i).

50. EPA failed to make a determination on the FOIA Request from which EDF could exercise its statutory right of appeal. *See id*.

51. EPA failed to provide a date on which it would complete action on the FOIA Request. *See id.* § 552(a)(7)(B)(ii).

52. EPA failed to timely produce all non-exempt records responsive to the FOIA Request. *See id.* § 552(a)(3)(A).

53. Unless EPA's violations of FOIA are enjoined by this Court, EPA will continue to violate EDF's legal rights to timely receive a complete set of responsive documents sought through the FOIA Request.

54. It is in the public interest for the Court to issue an injunction requiring EPA's immediate compliance with FOIA.

**REQUEST FOR RELIEF**

EDF requests the following relief from the Court:

A. Declare unlawful EPA's failure to provide EDF with a statutorily-required determination on the FOIA Request within FOIA's deadlines.

B. Declare unlawful EPA's failure to make the requested records promptly available to EDF.

C. Order EPA to provide EDF with all responsive records immediately, at no charge to EDF, and in unredacted form unless an exemption is applicable and properly asserted.

D. Order EPA to provide a *Vaughn* index of any responsive records or portions of records withheld under the claim of a FOIA exemption. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

E. Award EDF its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412, and any other applicable law.

F. Grant any further relief as the Court deems just and proper.

Respectfully submitted on April 25, 2025.

/s/ Nathaniel H. Hunt
NATHANIEL H. HUNT (Bar ID CO0107)
Kaplan Kirsch LLP
1675 Broadway, Suite 2300
Denver, CO  80202
Telephone:  (303) 825-7000
E-mail:  nhunt@kaplankirsch.com

WILLIAM D. MARSH (CA SBN 200082)*
Kaplan Kirsch LLP
One Sansome Street, Suite 2910
San Francisco, CA  94104
Telephone:  (415) 907-8704
E-mail: wmarsh@kaplankirsch.com
*Application for admission to D.D.C. Bar pending

ERIN MURPHY (Bar ID D00532)**
Environmental Defense Fund
555 12th St. NW, Suite 400
Washington, D.C. 20004
Telephone: (202) 572-3525
E-mail: emurphy@edf.org
**Practicing pursuant to D.C. Ct. App. Rule 49(c)(3)

Counsel for Environmental Defense Fund Fund