# EXHIBIT A



March 27, 2025

**SUBMITTED ELECTRONICALLY**

National Freedom of Information Officer
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue NW (2822T)
Washington, DC 20460
(202) 566-1667

**Re: Freedom of Information Act Request for Records Associated with Compliance
Exemptions Under Clean Air Act Section 112(i)**

Dear Freedom of Information Officer:

Environmental Defense Fund ("EDF") respectfully requests records, as that term is defined at 5
U.S.C. § 552(f)(2) of the Freedom of Information Act ("FOIA"), of U.S. Environmental
Protection Agency ("EPA") activities and communications regarding use of Clean Air Act
section 112(i)(3)(B) and 112(i)(4) authorities to provide compliance exemptions to stationary
sources for National Emission Standards for Hazardous Air Pollutants (NESHAPs) promulgated
under Clean Air Act section 112.[1]

### Background

On March 12, 2025, EPA issued a press statement announcing reconsideration of the Mercury
and Air Toxics Standards (MATS) for coal-fired power plants[2] and "multiple National Emission
Standards for Hazardous Air Pollutants (NESHAPs) affecting a broad range of American
industrial sectors."[3] EPA also announced it was "[r]edirecting enforcement resources to EPA's

---

[1] *See* 42 U.S.C. § 7412(i)(3)(B) (allowing the EPA Administrator to grant up to a one-year extension to comply with
emission standards if "necessary for the installation of controls"); *id*. §7412(i)(4) (allowing the President to exempt a
source from compliance for up to two years upon a finding that "the technology to implement such standard is not
available and that it is in the national security interests of the United States to do so.").
[2] *National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating
Units Review of the Residual Risk and Technology Review*, 89 Fed. Reg. 38,508 (May 7, 2024) (residual risk and
technology review rule); *see also* EPA, Fact Sheet; Mercury and Air Toxics Standards (MATS) (Mar. 12, 2025),
https://www.epa.gov/system/files/documents/2025-03/fact-sheet-reconsideration-of-mercury-and-air-toxics-
standards.pdf.
[3] EPA, Press Release: Trump EPA Announces Reconsideration of Air Rules Regulating American Energy,
Manufacturing, Chemical Sectors (NESHAPs) (Mar. 12, 2025), https://www.epa.gov/newsreleases/trump-epa-
announces-reconsideration-air-rules-regulating-american-energy-manufacturing.

core mission to relieve the economy of unnecessary bureaucratic burdens that drive up costs for American consumers (Enforcement Discretion)."[4]

The agency announced an exemption application process, indicating that EPA is facilitating Presidential exemptions for a variety of stationary pollution sources under section 112(i)(4) of the Clean Air Act—including Mercury and Air Toxics Standards for coal-fired power plants—and directing sources "interested in [obtaining] a Presidential exemption" from compliance requirements to "provide their recommendations to EPA by March 31, 2025."[5] EPA is considering exemptions for nine NESHAP rules that reduce pollution from the energy, manufacturing and chemical industries:[6]

- National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Units Review of the Residual Risk and Technology Review (89 FR 38508; May 7, 2024) (MATS Rule)
- New Source Performance Standards for the Synthetic Organic Chemical Manufacturing Industry and National Emission Standards for Hazardous Air Pollutants for the Synthetic Organic Chemical Manufacturing Industry and Group I & II Polymers and Resins (89 FR 42932; May 16, 2024) (HON rule);
- National Emission Standards for Hazardous Air Pollutants: Ethylene Oxide Emissions Standards for Sterilization Facilities Residual Risk and Technology Review (89 FR 24090; April 5, 2024) (Sterilizer Rule);
- National Emission Standards for Hazardous Air Pollutants: Rubber Tire Manufacturing (89 FR 94886; November 29, 2024) (Rubber Tire Rule);
- National Emission Standards for Hazardous Air Pollutants: Primary Copper Smelting Residual Risk and Technology Review and Primary Copper Smelting Area Source Technology Review (89 FR 41648; May 13, 2024) (Copper Rule);
- National Emission Standards for Hazardous Air Pollutants: Integrated Iron and Steel Manufacturing Facilities Technology Review (89 FR 23294; April 3, 2024) (Iron and Steel Rule);
- National Emission Standards for Hazardous Air Pollutants: Lime Manufacturing Plants Technology Review (89 FR 57738; July 16, 2024) (Lime Rule);
- National Emission Standards for Hazardous Air Pollutants for Coke Ovens: Pushing, Quenching, and Battery Stacks, and Coke Oven Batteries; Residual Risk and Technology Review, and Periodic Technology Review (89 FR 55684; July 5, 2024) (Coke Ovens Rule); and

---

[4] EPA, Press Release: EPA Launches Biggest Deregulatory Action in U.S. History (Mar. 12, 2025), https://www.epa.gov/newsreleases/epa-launches-biggest-deregulatory-action-us-history
[5] See EPA, Fact Sheet; Mercury and Air Toxics Standards at 1-2 (MATS) (Mar. 12, 2025), https://www.epa.gov/system/files/documents/2025-03/fact-sheet-reconsideration-of-mercury-and-air-toxics-standards.pdf.
[6] See EPA, Press Release: Trump EPA Announces Reconsideration of Air Rules Regulating American Energy, Manufacturing, Chemical Sectors (NESHAPs) (Mar. 12, 2025), https://www.epa.gov/newsreleases/trump-epa-announces-reconsideration-air-rules-regulating-american-energy-manufacturing; EPA, Fact Sheet: National Emissions Standards for Hazardous Air Pollutants (NESHAP) (Mar. 12, 2025), https://www.epa.gov/system/files/documents/2025-03/neshap_powering-the-great-american-comeback_fact-sheet_2.pdf.

- National Emission Standards for Hazardous Air Pollutants: Taconite Iron Ore Processing (89 FR 16408; March 6, 2024) (Taconite Rule).

EPA also published a webpage outlining in more specificity the process through which sources or facilities could request exemptions, instructing them to "submit a request for a Presidential Exemption to this email address: airaction@epa.gov by March 31, 2025" and outlining other information the source or facility should provide in the email.[7]

### *Request*

**EDF requests the following records**:
1. Records relating to EPA's action instituting a process to issue compliance exemptions under Clean Air Act section 112, including correspondence with outside entities about the development of, and institution of, this process;
2. Records of decisions by any federal or state entity to either grant or deny a compliance exemption pursuant to Clean Air Act section 112(i)(3)(B) or 112(i)(4);
3. Records of the rationale or reasoning for the decision to grant or deny the exemption;
4. All correspondence with outside entities relating to Clean Air Act section 112(i)(3)(B) or 112(i)(4) exemptions, including any requests for exemptions and any information or materials in support of a request for such an exemption;
5. All correspondence to and from the following electronic mailbox: airaction@epa.gov.

EPA may respond to items 1 and 4 above by searching for all correspondence and records detailed below in items (i)-(ii), that contain one or more of the search terms detailed below in item (iii):

(i) correspondence with and/or between any of the following EPA transition team and/or political appointees; and any briefing materials, memos, presentations or other documents created by or shared with the following EPA transition team and/or political appointees:
- Michael Abboud,
- Eric Amidon,
- Anne Idsal Austin,
- Jaide Barja,
- Nancy Beck,
- Steven Cook,
- Thomas Corlett,
- Lynn Deklava,
- Alex Dominguez,
- Sean Donahue,
- David Fotouhi,
- Daniel Gall,
- Adam Gustafson,

---

[7] EPA, Clean Air Act Section 112 Presidential Exemption Information, https://www.epa.gov/stationary-sources-air-pollution/clean-air-act-section-112-presidential-exemption-information (last accessed March 26, 2025).

3

- Catherine Paige Hanson,
- Jessica Kramer,
- Cora Mandy,
- (William) Chad Mcintosh,
- James Payne (Acting Administrator from Jan. 20-30, 2025)
- John Rich,
- Carla Sands,
- Justin Schwab,
- Aaron Szabo,
- Abigale Tardif,
- Victoria Tran,
- Molly Vaseliou,
- Travis Voyles,
- William (Bill) Wehrum,
- Ben Weiner
- Andrew Wheeler,
- Lee Zeldin,

EPA DOGE Team:
- Erica Jehling,
- Gautier Cole Killian,
- Kathryn Loving.

(ii) correspondence between any of the EPA transition/political employees identified above at (i), with any external, governmental and non-governmental stakeholders, including, but not limited to, individuals associated with the following entities and their subsidiaries:
- American Electric Power
  - (For ease of records search, please search for correspondence involving emails ending in @aep.com)
- American Fuel & Petrochemical Manufacturers
  - (For ease of records search, please search for correspondence involving emails ending in @afpm.org)
- American Petroleum Institute
  - (For ease of records search, please search for correspondence involving emails ending in @api.org)
- America's Power
  - (For ease of records search, please search for correspondence involving emails ending in @americaspower.org)
- American Public Power Association
  - (For ease of records search, please search for correspondence involving emails ending in @publicpower.org)
- Associated Electric Cooperative
  - (For ease of records search, please search for correspondence involving emails ending in @aeci.org)
- Basin Electric Power Cooperative

4

- - (For ease of records search, please search for correspondence involving emails ending in @bepc.org)
- Denka Performance Elastomer LLC aka Denka
- Duke Energy
  - (For ease of records search, please search for correspondence involving emails ending in @duke-energy.com)
- Edison Electric Institute
  - (For ease of records search, please search for correspondence involving emails ending in @eei.org)
- Electric Generators MATS Coalition
  - (For ease of records search, please search for correspondence involving emails ending in @mcguirewoods.com)
- Lignite Energy Council
  - (For ease of records search, please search for correspondence involving emails ending in @lignite.com)
- Luminant Generation Company
  - (For ease of records search, please search for correspondence involving emails ending in @luminant.com)
- Midwest Ozone Group
  - (For ease of records search, please search for correspondence involving emails ending in @Steptoe-Johnson.com)
- Minnkota Power Cooperative
  - (For ease of records search, please search for correspondence involving emails ending in @minnkota.com)
- NACCO Natural Resources
  - (For ease of records search, please search for correspondence involving emails ending in @nacco.com)
- National Mining Association
  - (For ease of records search, please search for correspondence involving emails ending in @nma.org)
- National Rural Electric Cooperative Association
  - (For ease of records search, please search for correspondence involving emails ending in @nreca.coop)
- NorthWestern Energy
  - (For ease of records search, please search for correspondence involving emails ending in @northwestern.com)
- NRG Energy
  - (For ease of records search, please search for correspondence involving emails ending in @nrg.com)
- Rainbow Energy Center
  - (For ease of records search, please search for correspondence involving emails ending in @rainbowenergycenter.com)
- Salt River Project Agricultural Improvement and Power District
  - (For ease of records search, please search for correspondence involving emails ending in @srpnet.com)

5

- San Miguel Electric Cooperative
  - (For ease of records search, please search for correspondence involving emails ending in @smeci.net)
- Southern Company
  - (For ease of records search, please search for correspondence involving emails ending in @southernco.com)
- Talen Energy
  - (For ease of records search, please search for correspondence involving emails ending in @talenenergy.com)
- Vistra Corporation
  - (For ease of records search, please search for correspondence involving emails ending in @vistracorp.com)
- Westmoreland Mining
  - (For ease of records search, please search for correspondence involving emails ending in @westmoreland.com)
- The Office of the Alaska Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @alaska.gov)
- The Office of the Arkansas Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @arkansasag.gov)
- The Office of the Georgia Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @law.ga.gov)
- The Office of the Idaho Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @ag.idaho.gov)
- The Office of the Indiana Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @atg.in.gov)
- The Office of the Iowa Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @ag.iowa.gov)
- The Office of the Kentucky Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @ky.gov)
- The Office of the Louisiana Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @ag.louisiana.gov)
- The Office of the Mississippi Attorney General ,
  - (For ease of records search, please search for correspondence involving emails ending in @ago.ms.gov)
- The Office of the Missouri Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @ago.mo.gov)

6

- The Office of the Montana Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @mt.gov)
- The Office of the Nebraska Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @nebraska.gov)
- The Office of the North Dakota Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @nd.gov)
- The Office of the Oklahoma Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @oag.ok.gov)
- The Office of the South Carolina Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @scag.gov)
- The Office of the South Dakota Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @state.sd.us)
- The Office of the Tennessee Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @ag.tn.gov)
- The Office of the Texas Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @oag.texas.gov)
- The Office of the Utah Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @agutah.gov)
- The Office of the Virginia Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @oag.state.va.us)
- The Office of the West Virginia Attorney General,
  - (For ease of records search, please search for correspondence involving emails ending in @wvago.gov)
- The Office of the Wyoming Attorney General
  - (For ease of records search, please search for correspondence involving emails ending in @wyo.gov).

(iii) EDF requests the correspondence and other records detailed above that contain any of the following search terms:
- NESHAP,
- MATS,
- RTR,
- 112,
- 112(i)(3),
- 112(i)(4),

7

- 40 C.F.R. 63.6(a)(1)(ii),
- Presidential exemption,
- Compliance extension, or
- National security interests.

Correspondence includes hard-copy and electronic correspondence including, but not limited to, emails, voicemails, text messages, Signal messages, and correspondence transmitted through any other electronic platform. This request includes correspondence for which any of the listed individuals were among the sender(s) and recipient(s), collectively, regardless of whether the correspondence also included any other sender(s) or recipient(s). EDF also requests all files attached to the emails or other correspondence records that are identified in the records search detailed above, as well as copies of any files obtained via downloadable links within the body of such emails or other correspondence.

EDF respectfully requests records produced, modified, or transmitted since January 20, 2025 that exist as of the date that EPA begins searching for records responsive to this request.

EDF requests that documents be produced in a readily accessible electronic format.

If any of the records sought in this request are deemed by the Agency to be properly withheld under a FOIA exemption, 5 U.S.C. § 552(b), please provide EDF with an explanation, for each such record or portion thereof, sufficient to identify the record and the particular exemption(s) claimed.

### *Request for Expedited Processing*

Pursuant to 5 U.S.C. § 552(a)(6)(E) and 40 C.F.R. § 2.104(g)(1), EDF respectfully seeks expedited processing based on the "compelling need" that EDF is "primarily engaged in disseminating information and there is an urgency to inform the public about actual or alleged Federal Government activity." In support of this request, I certify that the following statements are true and correct to the best of my knowledge and belief:

1. EDF engages in extensive, daily efforts to inform the public about matters affecting public health, environmental and energy policy, as well as about climate change science and the human health impacts of pollution and toxic contaminants. EDF has multiple channels for distributing information to the public, including through direct communication with its more than 3 million members and supporters, press releases, blog posts, active engagement on social media, and frequent appearances by staff in major media outlets.[8]

---

[8] *See, e.g.*, EDF Press Release: New Interactive Map Shows Nationwide Pollution from Gas Turbines (Jan. 15, 2025), https://www.edf.org/media/new-interactive-map-shows-nationwide-pollution-gas-turbines; Maxine Joselow, *Oil companies face a new fine for methane. Trump could scrap it.*, Washington Post (Nov. 12, 2024), https://www.washingtonpost.com/climate-environment/2024/11/12/methane-fee-epa-cop29/ (quoting Mark Brownstein, Senior VP of Energy for EDF); Niko Kommenda, *See how the Inflation Reduction Act is affecting your community*, Washington Post (Oct. 28, 2024), https://www.washingtonpost.com/climate-

2. This request concerns Federal Government activity—specifically, the creation of a process to rapidly grant compliance exemptions from hazardous air pollution standards by EPA and the President of the United States, without appropriate public participation or consideration of the harmful impacts to human health and the environment. EPA is actively soliciting industrial sector "recommendations" on granting section 112(i) exemptions for sources to delay compliance with the requirements of the Clean Air Act, which requires sources to limit their emissions of highly toxic hazardous air pollutants such as mercury, lead, and arsenic.[9]

3. This request concerns a matter of current exigency to the American public. To take but one NESHAP as an example, the Mercury and Air Toxics Standards limit the emission of numerous hazardous air pollutants that are extremely dangerous to human health. Exempting coal plants from compliance or extending the time before they must comply with current standards will increase community exposure to mercury, lead, arsenic, and many other toxic pollutants with well-established health effects, including brain damage for children, developmental deficits, cardiovascular disease, cancer, and premature death. EPA has asked sources to submit recommendations by March 31, 2025, indicating that such exemptions could be issued rapidly.[10] It is urgent and critical that the public be informed about pollution sources that might be given additional time to comply with pollution standards or exempted from complying with pollution standards and thus will present a greater health risk to the public than the public is currently anticipating.

4. Responsive records will be vital to inform the public about which stationary sources of air pollution may be polluting more than is expected due to compliance exemptions or extensions. They will also inform the public about the basis for EPA's recommendation to exempt industrial sources such as coal-fired power plants from the Clean Air Act's requirements to control hazardous air pollution and allow for greater transparency on whether these exemptions are consistent with the agency's statutory mandate to protect public health and the environment.

---

environment/interactive/2024/climate-bill-biden-clean-energy/ (quoting Joanna Slaney, Associate VP of Government Affairs for EDF); David Gelles, *Confronting Our New Reality*, N.Y. Times (Sept. 25, 2024) (quoting Fred Krupp, President of EDF), https://www.nytimes.com/2024/09/25/climate/climate-change-environment-planet.html; Ted Kelly, *Building a better grid: The latest steps to deliver reliable, affordable and clean power*, EDF Energy Exchange (June 6, 2024), https://blogs.edf.org/climate411/2024/06/06/building-a-better-grid-the-latest-steps-to-deliver-reliable-affordable-and-clean-power/; J. Villegas, *We need to close a mercury pollution loophole for lignite coal plants*, EDF Climate 411 (Apr. 12, 2024), https://blogs.edf.org/climate411/2024/04/12/we-need-to-close-a-mercury-pollution-loophole-for-lignite-coal-plants/.

[9] *See* 42 U.S.C. § 7412; EPA, Fact Sheet; Mercury and Air Toxics Standards at 1-2 (MATS) (Mar. 12, 2025), https://www.epa.gov/system/files/documents/2025-03/fact-sheet-reconsideration-of-mercury-and-air-toxics-standards.pdf; EPA, Clean Air Act Section 112 Presidential Exemption Information, https://www.epa.gov/stationary-sources-air-pollution/clean-air-act-section-112-presidential-exemption-information (last accessed Mar. 26, 2025).

[10] *See, e.g.,* EPA, Fact Sheet; Mercury and Air Toxics Standards at 2 (MATS) (Mar. 12, 2025), https://www.epa.gov/system/files/documents/2025-03/fact-sheet-reconsideration-of-mercury-and-air-toxics-standards.pdf (seeking recommendations by March 31, 2025 from owners and operators on whether coal plants should be exempted from the MATS update rule).

5.  Recent reporting has demonstrated that senior Trump Administration officials are relying on the Signal messaging platform to communicate regarding government actions and to make decisions regarding government actions.[11] Signal messages automatically disappear after a set period of time.[12] A nonprofit advocacy organization has filed a lawsuit challenging Trump Administration officials' unauthorized use of Signal pursuant to the Federal Records Act and Administrative Procedure Act.[13]

### Request for Fee Waiver

As a non-partisan, non-profit organization that provides information that is in the public interest, EDF respectfully requests a waiver of fees associated with this request, in accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(n). We are not seeking information for any commercial purpose and the records received will contribute to a greater public understanding of Federal government activities that are of considerable public interest: the nature and basis for requests for exemptions to EPA's NESHAPs, and possible grant of such exemptions, including the Mercury and Air Toxics standards.

In 2022-2024, EPA strengthened standards that reduce hazardous air pollution from coal-fired electric generating units (power plants) through a public-facing process and on the basis of a comprehensive factual record that included substantial public input.[14] Industry groups have called on the new administration to repeal EPA's power plant regulations.[15]

On March 12, 2025, EPA issued a press statement[16] and fact sheet[17] indicating its intent to reconsider the MATS technology review update rule promulgated on May 7, 2025.[18] These materials indicate that EPA is facilitating Presidential exemptions for power plant sources under

---

[11] Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans*, The Atlantic (Mar. 24, 2025), https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/.

[12] *See* Andrew Chow, What Is Signal, the Messaging App Used by Trump Officials, and Is It Safe?, Time (Mar. 26, 2025), https://time.com/7271850/signal-app-attack-plans-trump-officials/.

[13] Complaint for Declaratory and Injunctive Relief, *American Oversight v. Pete Hegseth*, Case No. 1:25-cv-883 (D.D.C., filed Mar. 25, 2025), https://americanoversight.org/litigation/american-oversight-v-hegseth-gabbard-ratcliffe-bessent-rubio-and-nara-regarding-military-actions-planned-on-signal-messaging-app/.

[14] 89 Fed. Reg. 38,508 (May 7, 2024).

[15] *See, e.g.,* Nat'l Ass'n of Mfrs., Letter to President Elect Trump at 5 (Dec. 5, 2024), https://nam.org/wp-content/uploads/2024/12/Manufacturers-Regulatory-Letter-to-President-Elect-Trump_12.5.24.pdf (asking Trump administration to repeal carbon dioxide standards for coal and gas power plants); Duke Energy et al., Letter to Rep. Zeldin, EPA Administrator Nominee at 5 (Jan. 15, 2025), https://appvoices.org/wp-content/uploads/2025/01/Electric_Power_Industry_Letter_on_EPA_Priorities_Jan._15_202553.pdf (calling on the Trump administration to "immediately work to repeal all portions of the [power plant] GHG Rule").

[16] EPA, Press Release: Trump EPA to Reconsider Biden-Harris MATS Regulation that Targeted Coal-Fired Power Plants to Be Shut Down (Mar. 12, 2025), https://www.epa.gov/newsreleases/trump-epa-reconsider-biden-harris-mats-regulation-targeted-coal-fired-power-plants-be.

[17] EPA, Fact Sheet; Mercury and Air Toxics Standards (MATS) (Mar. 12, 2025), https://www.epa.gov/system/files/documents/2025-03/fact-sheet-reconsideration-of-mercury-and-air-toxics-standards.pdf.

[18] 89 Fed. Reg. 38508 (May 7, 2024).

the Clean Air Act,[19] directing power plant owners and operators who are "interested in [obtaining] a Presidential exemption" from compliance requirements to "provide their recommendations to EPA by March 31, 2025," and that "[s]ources need only provide why technology is unavailable and why it is in the national security interests of the United States to provide the exemption."[20]

The agency is similarly "considering a 2-year compliance exemption via Section 112(i)(4) of the Clean Air Act" for facilities affected by several other NESHAPs regulating energy, manufacturing and chemical industries.[21]

The records requested herein will shed light on EPA decision-making and interactions with industry groups. These records are very likely to be "meaningfully informative" and to contribute "significantly" to "public understanding" about government actions taken by the Trump Administration to institute significant changes to EPA's NESHAPs, including the Mercury and Air Toxics Standards. *See* 40 C.F.R. § 2.107(n)(5)(ii), (iii). It is of great public interest to understand the basis for EPA's creation of a process to rapidly grant compliance exemptions from hazardous air pollution standards by EPA and the President of the United States, without appropriate public participation or consideration of the harmful impacts to human health and the environment.

EDF is well positioned to disseminate the records to the public, as we routinely issue press releases, action alerts, reports, analyses, and other public outreach materials.[22] EDF has expertise

---

[19] 42 USC § 7412(i)(4).

[20] EPA, Fact Sheet; Mercury and Air Toxics Standards at 1-2 (MATS) (Mar. 12, 2025), https://www.epa.gov/system/files/documents/2025-03/fact-sheet-reconsideration-of-mercury-and-air-toxics-standards.pdf.

[21] *See* EPA, Press Release: Trump EPA Announces Reconsideration of Air Rules Regulating American Energy, Manufacturing, Chemical Sectors (NESHAPs) (Mar. 12, 2025), https://www.epa.gov/newsreleases/trump-epa-announces-reconsideration-air-rules-regulating-american-energy-manufacturing; EPA, Fact Sheet: National Emissions Standards for Hazardous Air Pollutants (NESHAP) (Mar. 12, 2025), https://www.epa.gov/system/files/documents/2025-03/neshap_powering-the-great-american-comeback_fact-sheet_2.pdf (specifying that EPA is reconsidering eight additional NESHAPs, including the rules regulating synthetic organic chemical manufacturing facilities as well as polymers and resins, sterilization facilities, rubber tire manufacturing, copper smelting, iron and steel manufacturing, lime manufacturing, coke ovens, and taconite iron ore processing).

[22] *See, e.g.*, Marissa Nixon & Kae Tuitt, *Billions in federal investments energize zero-emission trucking*, EDF Energy Exchange (Jan. 14, 2025), https://blogs.edf.org/energyexchange/2025/01/14/billions-in-federal-investments-energize-zero-emission-trucking/; EDF Press Release: EPA Clears Way for California Clean Car Standards (Dec. 18, 2024), https://www.edf.org/media/epa-clears-way-california-clean-car-standards; Maxine Joselow, *Oil companies face a new fine for methane. Trump could scrap it.*, Washington Post (Nov. 12, 2024), https://www.washingtonpost.com/climate-environment/2024/11/12/methane-fee-epa-cop29/ (quoting Mark Brownstein, Senior VP of Energy for EDF); Niko Kommenda, *See how the Inflation Reduction Act is affecting your community*, Washington Post (Oct. 28, 2024), https://www.washingtonpost.com/climate-environment/interactive/2024/climate-bill-biden-clean-energy/ (quoting Joanna Slaney, Associate VP of Government Affairs for EDF); Marilynn Marsh-Robinson, *Electrifying Medium and Heavy-Duty Vehicles: A Critical Step Towards Environmental Justice in North Carolina*, EDF Climate 411 (May 15, 2024), https://blogs.edf.org/climate411/2024/05/15/electrifying-medium-and-heavy-duty-vehicles-a-critical-step-towards-environmental-justice-in-north-carolina/.

on industrial and power sector related emissions[23] and is well qualified to present the records to the public in a manner that clearly conveys their value, and we fully intend to disseminate information received in response to this request that is informative, newsworthy, or otherwise of value to the public. Accordingly, we respectfully request that the documents be furnished without charge.

In the event EDF's request for a fee waiver is denied or if you have any questions about this request, please contact me immediately by telephone at (415) 293-6083 or by email at infotransparency@edf.org.

Respectfully submitted,

Richard Yates
Environmental Defense Fund
555 12th Street NW, Suite 400
Washington, DC 20004
infotransparency@edf.org
(415) 293-6083

---

[23] *See, e.g.*, EDF blog, We Need to Close a Mercury Pollution Loophole for Lignite Coal Plants (Apr. 12, 2024), https://blogs.edf.org/climate411/2024/04/12/we-need-to-close-a-mercury-pollution-loophole-for-lignite-coal-plants/; EDF Press Release: New Interactive Map Shows Nationwide Pollution from Gas Turbines (Jan. 15, 2025), https://www.edf.org/media/new-interactive-map-shows-nationwide-pollution-gas-turbines; Brief of Non-Governmental Organizations & Trade Association Respondents, West Virginia v. EPA, U.S. No. 20-1530 (Jan. 18, 2022) (arguing before the U.S. Supreme Court in defense of the legality of the Obama administration's 2015 Clean Power Plan, which would have required power plant GHG reductions); Response of Environmental & Public Health Respondents in Opposition to Applications for a Stay, North Dakota v. EPA, U.S. No. 24A178 (Sept. 13, 2024) (opposing applications for an emergency stay of the 2024 Mercury and Air Toxics Technology Review Rule in the U.S. Supreme Court).